IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MILLARD REFRIGERATED SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CIVIL ACTION 15-0245-WS-N |
| RAY DARVILLE, SR., *et al.*, | ) ) ) |
| Defendants. | ) |

ORDER

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 20). The Motion has been briefed and is ripe for disposition.[1]

**I.    Relevant Background.[2]**

---

[1] Also pending is defendants' Request for Oral Argument (doc. 23). Defendants ask that the Motion for Summary Judgment be set for oral argument because they "believe that oral argument would assist the Court in its consideration of the material issues of fact," and they "believe that the Court would benefit from oral argument on the legal issues raised by the parties." (Doc. 23, at 1.) Such generalities fall short of the "specific reasons" required by the Local Rules to support a request for oral argument. *See* Civil L.R. 7(h). At any rate, upon careful consideration of the parties' written submissions, the undersigned concludes that oral argument would not be helpful in resolving the discrete issues presented on summary judgment. On that basis, the Court exercises its discretion under Civil L.R. 7(h) to **deny** defendants' request. *See id.* ("In its discretion, the Court may rule on any motion without oral argument.").

[2] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, the Darvilles' evidence is taken as true and all justifiable inferences are drawn in their favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [the Darvilles'] version of the facts drawing all justifiable inferences in [their] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

On August 23, 2010, an accidental release of anhydrous ammonia occurred at a marine terminal and commercial freezer in Theodore, Alabama. (Doc. 1, ¶¶ 7-8.)[3] Plaintiff, Millard Refrigerated Services, Inc., owned and operated that facility. (*Id.*) Eleven people who claimed to have sustained injuries via exposure to the Millard ammonia release retained a law firm in Ft. Lauderdale, Florida. Nine of those 11 claimants attended a mediation session with Millard on June 24, 2014, following which they successfully compromised and settled their claims. (Hancock Aff. (doc. 24, Exh. A), ¶¶ 8-9.) The remaining two claimants, Ray Darville, Sr. and Ray Darville, Jr., the named defendants in this action, were unable to attend the June 2014 mediation session and, consequently, did not settle their claims against Millard. (*Id.*)

The core issue presented in this declaratory judgment action is whether the Darvilles' claims are now time-barred.[4] Indeed, Millard seeks a judicial declaration that "all personal injury claims (if any) held by [the Darvilles] are barred by the applicable statute of limitations." (Doc. 1, ¶ 20.) For their part, the Darvilles interpose counterclaims against Millard for negligence, demanding compensatory damages for their personal injuries arising from inhalation of anhydrous ammonia released by Millard's facility in August 2010. (Doc. 6, at 6-10.)[5] Millard now moves for summary judgment on this action in its entirety on the theory that the Darvilles' claims are time-barred.

Everyone agrees that the Darvilles' negligence claims are governed by the two-year limitations period prescribed by Alabama Code § 6-2-38(*l*). (Doc. 21, at 1; Hancock Aff., ¶ 4.)

---

[3]   The Court takes judicial notice that anhydrous ammonia is a toxic gas or liquid that may be corrosive to tissues upon contact. According to the Centers for Disease Control, inhalation exposure to anhydrous ammonia may cause nausea, vomiting, abdominal pain, and (in severe cases) swelling of the mouth, lips and larynx and severe corrosive damage or burns to the mouth, throat and stomach. *See* http://www.cdc.gov/niosh/ershdb/emergencyresponsecard_29750013.html (last accessed January 28, 2016).

[4]   Millard's Complaint properly predicates federal subject matter jurisdiction on the diversity provisions of 28 U.S.C. § 1332, inasmuch as all parties agree that there is complete diversity of citizenship (Millard being a Georgia corporation with its principal place of business in Nebraska, and the Darvilles being citizens of Florida and/or the Bahamas) and that the amount in controversy exceeds $75,000. (Doc. 1, ¶¶ 1-2, 5; doc. 6, at 4, 8, 10.)

[5]   In the pleadings, the Darvilles elaborate that they suffered "immediate respiratory distress" when a "large plume of ammonia" was released from the Millard facility into the atmosphere, from which it dispersed across a canal to the Darvilles' location. (Doc. 6, at 4-5.)

As it became apparent that Millard and the 11 original claimants (including the Darvilles) would be unable to resolve their dispute within two years after the August 23, 2010 ammonia release, the parties entered into a Tolling Agreement on August 16, 2012.  (Hancock Aff., ¶ 5; Kavanagh Aff. (doc. 27, Exh. A), ¶ 5.)  On its face, this Agreement provided that the limitations period governing the Darvilles' claims against Millard is "hereby tolled from the date of this Agreement until … twelve (12) months from the effective date of this Agreement (the 'Tolling Period')."  (Doc. 24, Exh. C, ¶ 2.)  Significantly, the Tolling Agreement further provided that "[t]he Tolling Period may be extended if agreed upon in writing by all parties to this Agreement."  (*Id.*)  In a fit of redundancy, the Tolling Agreement specified in two other paragraphs that "[t]his Agreement and the Tolling Period may be modified only in writing signed by the parties hereto" (*id.*, ¶ 6) and that "[t]his Agreement may not be modified except by a writing executed by the parties hereto" (*id.*, ¶ 9).  The Tolling Agreement was signed by Millard's Secretary and General Counsel, and by counsel for the 11 claimants.

By July 2013, both sides concurred that extension of the soon-to-expire Tolling Agreement for an additional 90 days was appropriate to allow the parties to explore settlement.  On August 1, 2013, claimants' counsel sent a letter to Millard's counsel reading, in part, as follows: "This will confirm our telephone conversation today wherein we requested a 90 day extension on the Tolling Agreement. … Please advise if there is any problem with the extension on the Tolling Agreement so we can immediately file our claims and avoid any issue with the Statute of Limitations."  (Doc. 21, Exh. 1.)  On August 7, 2013, Millard's counsel responded via letter, to-wit: "This will confirm that the parties have agreed to extend the tolling agreement in place for an additional ninety (90) days."  (Doc. 1, Exh. B.)  No follow-up writing was prepared, much less signed by the parties or their attorneys.

For better or worse, Millard's counsel and the Darvilles' counsel extended the Tolling Agreement on eight (8) additional occasions between November 2013 and October 2014.  (Hancock Aff., ¶ 6; Kavanagh Aff., ¶ 5.)  Typically, the parties achieved such extensions via telephonic agreements between counsel, backed by confirmation letters or emails, prior to the previously agreed-upon expiration date.  No written agreements were ever prepared or executed by the parties to effectuate these extensions; rather, they consistently utilized an oral-agreement / informal-written-confirmation methodology.

For example, on November 1, 2013, the Darvilles' counsel sent a letter to Millard's counsel stating, "This will confirm our telephone conversation of this morning wherein … we agreed to extend the tolling agreement in place up and until midnight on December 31, 2013." (Doc. 1, Exh. C.) Four days later, Millard's counsel responded with a letter to the Darvilles' counsel stating, "This will confirm the agreement of Millard and its insurance carriers to extend the Tolling Agreement in place with your clients until December 31, 2013." (Doc. 1, Exh. D.) Likewise, on February 19, 2014, the Darvilles' counsel sent an email to Millard's counsel stating that, pursuant to counsel's conversation earlier that day, "[P]lease respond confirming your client's agreement to extend the agreement until April 15, 2014." (Doc. 1, Exh. G.) Five days later, Millard's counsel sent a one-sentence email back to the Darvilles' counsel reading, "This will confirm the tolling agreement … is extended up to and including 4/15/14." (Doc. 1, Exh. H.) Such brief, one-line email exchanges were typical of the manner in which the parties confirmed oral agreements to extend the Tolling Agreement throughout 2013 and 2014. In each instance, counsel generated a short email or letter to confirm the agreed-upon extension until a date certain, but no further action was taken and no formal documentation was drafted. (*See* doc. 1, Exhs. C through P; Hancock Aff., ¶ 7 (describing course of dealing in which "the parties would agree verbally to extend the tolling period" and "[t]hereafter, an email would confirm the verbal agreement").)

Up through the summer of 2014, counsel on both sides appeared to be working together in a professional and cooperative manner to explore resolution of the Darvilles' claims short of litigation.[6] As noted, the other nine claimants represented by the Ft. Lauderdale firm settled their anhydrous ammonia exposure claims against Millard pursuant to a June 2014 mediation that the Darvilles did not attend. The remaining parties agreed to conduct a Millard / Darville mediation at a later date, and repeatedly assented to extensions of the Tolling Agreement to effectuate that

---

[6] In that regard, correspondence between counsel was consistently courteous and amicable. For example, an email from the Darvilles' counsel to Millard's counsel dated August 18, 2014, included the remark, "It remains a pleasure to work with you on these cases. We truly appreciate all of the effort and time you have put into same." (Doc. 1, Exh. O.) Such sentiments echoed earlier comments in correspondence by counsel that it was "a genuine pleasure to work with such courteous professionals," with opposing counsel responding in kind. (Doc. 24, Exh. D.) Unfortunately, this cordial, cooperative atmosphere dissipated abruptly, resulting in this proliferation of litigation.

shared objective. (Hancock Aff., ¶¶ 10, 11.) Ultimately, both sides agreed and confirmed with the mediator (Michael Upchurch) a mediation setting of October 15, 2014. (*Id.*, ¶ 12.) Such a scheduling arrangement dovetailed neatly with the parties' oral agreement, confirmed by a brief email exchange on August 18, 2014, to extend the Tolling Agreement through October 17, 2014. (Doc. 1, Exh. O; Hancock Aff., ¶ 12.) So far, so good.

This mediation plan unraveled on October 6, 2014, when Millard's counsel notified the Darvilles' counsel and mediator Upchurch of the "need to cancel and reschedule due to circumstances beyond my control." (Doc. 24, Exh. E; Hancock Aff., ¶ 13.) The following day, Upchurch circulated a list of a dozen possible dates in November and December for rescheduling the mediation. (Doc. 24, Exh. F.) That same week, counsel for both sides exchanged emails confirming that the Tolling Agreement had been extended through December 15, 2014, presumably to accommodate a new mediation setting. (Doc. 24, Exh. E at 2.) Later in October, the Darvilles' counsel and mediator Upchurch confirmed a mediation setting of December 15 (the final day of the latest Tolling Agreement extension), pending assent by Millard's counsel; however, Millard's counsel did not respond, and that proposed setting was never locked in. (Hancock Aff., ¶ 16; doc. 24, Exh. G.) On November 18, 2014, the mediator's office notified the parties that December 15 was no longer available, indicated that the mediation would have to be set in the new year, and offered nine potential dates for January 2015. (Hancock Aff., ¶ 18; doc. 24, Exh. H.)

What happened next is disputed, but critically important. Millard's counsel and the Darvilles' counsel spoke via telephone on the morning of November 18. According to non-movants, during that conversation, both sides agreed that (i) mediation remained necessary to resolve the Darvilles' claims against Millard, (ii) mediation of those claims would occur in 2015, and (iii) the statute of limitations would be tolled so that mediation could occur. (Hancock Aff., ¶¶ 20-21; Dolman Aff., ¶¶ 20-22.)[7] The Darvilles' evidence is that their counsel relied on

---

[7] The Court recognizes, of course, that Millard's counsel denies the third point. Millard's narrative is that at no time did anyone request or agree that the Tolling Agreement be extended beyond the expiration date of December 15, 2014. (Kavanagh Aff., ¶ 8.) According to Millard's counsel, "I did not consider it my obligation to make sure this was done." (*Id.*, ¶ 10.) On summary judgment review, however, the conflicting evidence on this point must be resolved in the non-movants' favor. While this Order assumes that the Darvilles' version of the facts is (Continued)

Millard's counsel's express representations during the November 18 phone call, based on which they believed that "no further action was necessary at that time to continue [their] clients' ability to resolve their claims through mediation." (Hancock Aff., ¶¶ 22-23.)  On that basis and in reliance on Millard's counsel's representations, the Darvilles refrained from filing suit against Millard immediately.  (*Id.*)  Be that as it may, the only writing that emerged from this November 18 discussion was a perfunctory, one-line email from Millard's counsel to the mediator's office, stating, "I just spoke to [the Darvilles' counsel] and we will coordinate additional dates in short order."  (Doc. 24, Exh. H.)  That email mentioned neither the Tolling Agreement nor the limitations period.

The other shoe dropped on May 11, 2015, when Millard filed its Complaint for Declaratory Judgment (doc. 1).  In that pleading, Millard asserted that the Tolling Agreement had expired on December 15, 2014; that the Agreement required all extensions to be in writing; that no such writing exists to extend the limitations period for the Darvilles' claims beyond December 15, 2014; and that principles of contract law require enforcement of the Tolling Agreement's unambiguous language and a judicial declaration that the Darvilles' contemplated damages claims arising from Millard's August 23, 2010 ammonia release are time-barred.  (Doc. 1, ¶¶ 12-15, 17-20.)  In a letter to the Darvilles' counsel dated May 12, 2015, Millard's counsel apprised them of the Complaint's filing and asserted his position that "any suggestion that we had some sort of tacit agreement that a 'to-be-scheduled' mediation would extend the tolling period … is expressly denied and … prohibited by the contractual agreement between the parties."  (Doc. 24, Exh. I.)

Millard now moves for summary judgment on the limitations issue.  In particular, Millard maintains that, as a matter of well-settled contract law and the parties' course of dealing, Millard is entitled to a judgment as a matter of law that the Darvilles' claims for damages arising from the August 2010 ammonia release are barred by the applicable statute of limitations.

---

correct, the Court makes no findings of fact and expresses no opinion as to the ultimate resolution of this credibility dispute at trial.

**II.     Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.    Analysis.**

The parties' divergent views on summary judgment are rooted in fundamental differences in perception, with minimal analytical overlap.  The Court will examine the Motion from each side's perspective.

   **A.    *Millard's Contract Interpretation Theory.***

According to Millard, this action is properly decided on a straightforward contractual interpretation theory.  In that regard, Millard points to the Tolling Agreement's provision that it "may be modified only in a writing signed by the parties thereto."  Under applicable law, courts must enforce unambiguous contract language as written by giving effect to the clear, plain meaning of the contract terms and not rewriting the agreement. *See, e.g., City of Gadsden v. Boman*, 143 So.3d 695, 704 (Ala. 2013) ("Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning.  If the court determines that the terms are unambiguous (susceptible of only one

reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.") (citations omitted).[8]

The plain language of the Tolling Agreement requires modifications (such as extensions of the tolling period) to be in a writing signed by the parties. However, there is no writing modifying the Tolling Agreement to extend beyond December 15, 2014. Based on that undisputed fact, Millard reasons, the unambiguous contract language forbids extension of the limitations period beyond that date. Because the Darvilles failed to file a complaint before the December 15 tolling deadline, Millard concludes, they no longer possess viable, timely claims for damages arising from the anhydrous ammonia release of August 2010. Again, from Millard's standpoint, this is a straightforward, simple exercise in giving effect to clear contractual terms.[9]

### B.     The Darvilles' Equitable Estoppel Theory.

By contrast, the Darvilles do not frame this dispute in terms of contract language, ambiguities, or anything of the sort. To the Darvilles, this case (or, at least, the summary judgment analysis) is all about equitable estoppel.[10] Alabama courts have explained that "[t]he

---

[8]     *See also Alabama Title Loans, Inc. v. White*, 80 So.3d 887 (Ala. 2011) ("Where contract terms are unambiguous, we do not look beyond the plain language of the contract to second-guess the intentions of the parties; nor will we speculate about what may have been the subjective expectations of the parties.") (citations omitted); *Public Bldg. Authority of City of Huntsville v. St. Paul Fire and Marine Ins. Co.*, 80 So.3d 171, 180 (Ala. 2010) ("A court may not make a new contract for the parties or rewrite their contract under the guise of construing it. … When interpreting a contract, a court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state.") (citations omitted).

[9]     Insofar as any ambiguity might be found in the Tolling Agreement, Millard cites extrinsic evidence that the parties had used writings to confirm each of the nine amendments to the Tolling Agreement up to and including the October 10, 2014 extension of the limitations period through December 15, 2014. (Doc. 21, at 9-10.) In Millard's view, such extrinsic evidence "establishes a pattern of conduct that informs and governs the parties' understanding for affecting [*sic*] extensions to the Agreement" (*id.* at 9) and "confirms that the tolling period has never been extended via oral understanding between the parties" (*id.* at 10).

[10]    In their Answer, the Darvilles enumerated as affirmative defenses the doctrines of estoppel, waiver and unclean hands, as well as the proposition that Millard's requested relief is "barred by its bad faith actions." (*Id.* at 3.)

purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience." *Wehle v. Bradley*, --- So.3d ----, 2015 WL 6618633, *8 (Ala. Oct. 30, 2015) (citations omitted).[11]

The Darvilles' position, quite simply, is that Millard should be estopped "from raising the statute of limitations as a defense because its representations and conduct have caused the Darvilles to delay filing suit until after the running of the statutory period." (Doc. 24, at 9.) In particular, the Darvilles point to evidence that (i) Millard unilaterally canceled the October 15 mediation, necessitating that it be rescheduled; (ii) Millard unilaterally frustrated the mediation setting for December 15 by being non-responsive in the rescheduling process; (iii) Millard's counsel assured the Darvilles' counsel in a November 18 telephone conversation that the limitations period would be tolled to enable mediation to occur in 2015; (iv) Millard's counsel provided written and oral representations that the mediation setting would be coordinated for 2015; and (v) the Darvilles relied on those representations to refrain from filing suit prior to the December 15 deadline. The Darvilles say that these representations, and their reliance on same, render it contrary to equity and good conscience for Millard to invoke the statute of limitations (and demand strict enforcement of the Tolling Agreement) to bar their claims.

Without question, the doctrine of equitable estoppel may apply in the limitations context. The Supreme Court has long recognized that "the maxim that no man may take advantage of his own wrong" is "[d]eeply rooted in our jurisprudence … and has frequently been employed to bar inequitable reliance on statutes of limitations." *Glus v. Brooklyn Eastern Dist. Terminal*, 359

---

[11] Where, as here, the underlying claims are brought under state law, principles of state law govern the application of equitable estoppel to a limitations defense. *See, e.g., Parish v. Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010) ("Because this is a state law claim, we apply Indiana law regarding the statute of limitations and any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel."); *Thomas v. FireRock Products, LLC*, 40 F. Supp.3d 783, 787 (N.D. Miss. 2014) ("state law applies where equitable estoppel is asserted to prevent a statute of limitations defense"); *Allen v. Andersen Windows, Inc.*, 913 F. Supp.2d 490, 510 (S.D. Ohio 2012) ("State law governs the application of equitable estoppel to state-law claims."). Notwithstanding the primacy of state law, there appear to be no meaningful differences between Alabama and federal jurisprudence concerning equitable estoppel that might affect its application here.

U.S. 231, 232-33, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).[12] It is well-settled, then, that "[t]he equitable principle of estoppel prevents a defendant whose representations or other conduct have caused a plaintiff to delay filing suit until after the running of the statutory period from asserting that bar to the action." *Green v. Roberts*, 2011 WL 4915231, *5 (S.D. Ala. Oct. 14, 2011) (citation omitted).

To establish equitable estoppel, a party must show that the opposing party "communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct." *Branch Banking & Trust Co. v. Nichols*, --- So.3d ---, 2015 WL 1877666, *10 (Ala. Apr. 24, 2015) (citation omitted).[13] The Eleventh Circuit has declared that "the constituent elements of estoppel constitute questions

---

[12] *See also Hammond v. City of Gadsden*, 493 So.2d 1374, 1376-77 (Ala. 1986) (observing that "[i]n some cases, … a party may be estopped to assert the statute-of-limitations defense," such as where there is "[d]elay in bringing an action caused by representations by a party on several occasions that it would attempt to resolve the underlying dispute" if such conduct "amount[s] to an affirmative inducement to the claimant to delay bringing an action") (citations omitted); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 655 (S.D. Ala. 2005) (to establish equitable estoppel, "the late arriving plaintiff must show that she was misled by defendant or its agents so that [s]he delayed suit because of … an affirmative statement that the statutory period to bring the action was longer than it actually was … or … comparable representations and conduct") (citation omitted); *D.L. Lee & Sons, Inc. v. ADT Security Systems, Mid-South, Inc.*, 916 F. Supp. 1571, 1577 (S.D. Ga. 1995) ("[t]he doctrine of equitable estoppel may be used to bar inequitable reliance on statutory or contractual time limitations" where a plaintiff shows that defendant misled her to delay filing suit because of "an affirmative statement that the statutory period to bring the actions was longer than it really was" or "comparable representations and conduct") (citation omitted); *Prouty v. National R.R. Passenger Corp.*, 572 F. Supp. 200, 205 (D.D.C. 1983) ("To rely on the doctrine of equitable estoppel, the party invoking it must have relied upon the acts or representations of his adversaries and because of such reliance, have refrained from instituting legal action within the limitation period.") (citation and internal quotation marks omitted).

[13] *See also Wehle*, 2015 WL 6618633, at *8 (similar); *City of Orange Beach v. Benjamin*, 821 So.2d 193, 196 (Ala. 2001) (equitable estoppel "must be predicated upon the conduct, language, or the silence of the party against whom it is sought to be invoked. Said conduct, language, or silence must amount to the misrepresentation or concealment of a material fact or facts.") (citations omitted); *Sea Byte, Inc. v. Hudson Marine Management Services, Inc.*, 565 F.3d 1293, 1304 (11th Cir. 2009) ("For equitable estoppel to apply there must be a representation of fact by one party contrary to a later asserted position, good faith reliance by another party, and a detrimental change in position by the later party due to the reliance.").

of fact." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1323 (11th Cir. 1989). "The type of action which is sufficient to prevent a defendant from asserting the statute of limitations must amount to an affirmative inducement to the claimant to delay bringing action." *Spearman v. Wyndham Vacation Resorts, Inc.*, 69 F. Supp.3d 1273, 1289 (N.D. Ala. 2014) (citation and internal quotation marks omitted). "The Court must also apply a 'standard of reasonableness' to these estoppel principles, looking to see whether a reasonable person would have allowed the statute of limitations to expire based on the defendant's actions." *Id.* In evaluating such an estoppel argument in the limitations context, courts "balance the purpose of the statute of limitations with the injustice that would result from allowing the defendants to claim it as a defense." *Sirmon v. Wyndham Vacation Resorts, Inc.*, 922 F. Supp.2d 1261, 1278 (N.D. Ala. 2013) (citation omitted).

Taking the summary judgment record and reasonable inferences from it in the light most favorable to the Darvilles, genuine issues of material fact remain as to the affirmative defense of equitable estoppel. With regard to the element of a misleading communication, the Darvilles' evidence is that Millard's counsel expressly agreed in the November 18 telephone conference to extend the Tolling Agreement to allow the Darvilles' claims to be mediated in 2015. Additional evidence reflects that Millard's counsel notified the Darvilles' counsel and the mediator in writing on November 18 that "we will coordinate additional [mediation] dates in short order." The context of this November 18 writing was that (i) everyone knew that the Tolling Agreement was to expire on December 15, 2014, (ii) everyone knew the mediator had no availability until January 2015, (iii) it would be a nonsensical, futile gesture to schedule mediation for time-barred claims, (iv) the parties' history reflected a longstanding mutual understanding that the Darvilles would not pursue litigation before mediation took place, with nine extensions of the Tolling Agreement to facilitate that shared objective, and (v) Millard's counsel had agreed in a telephone conference earlier that morning to extend the Tolling Agreement pending mediation in 2015. In light of the foregoing, the Court cannot summarily reject the Darvilles' position that the November 18 email was an implicit affirmation that the Tolling Agreement would be extended. Considered in the aggregate, the evidence of Millard's counsel's conduct, language and silence – via both the telephone call and the follow-up email – may be reasonably viewed as an affirmative inducement to the Darvilles to refrain from filing suit before the previously established deadline in the Tolling Agreement expired.

With respect to the reliance and material harm elements of equitable estoppel, the Darvilles' showing is likewise sufficient to raise a triable issue.  Indeed, the Darvilles' lawyers aver that they relied on the misleading representations of Millard's counsel in postponing mediation and refraining from filing suit prior to the previously agreed December 15 expiration date of the Tolling Agreement.  (Hancock Aff., ¶¶ 22-23.)  And if Millard were permitted to backtrack on those November 18 representations now, the consequences to the Darvilles would be catastrophic.  The Tolling Agreement would be deemed to have expired on December 15, 2014, rendering the Darvilles' claims against Millard arising from the August 2010 ammonia release irrevocably time-barred and foreclosing any remedy against Millard for their ammonia inhalation injuries.

### C. *Millard's Rebuttal of the Equitable Estoppel Defense.*

In response, Millard posits as counterarguments that the Tolling Agreement and the parties' course of dealing contemplated written extensions only, but no written extension exists here; that there is no evidence of affirmative misleading conduct by Millard; that equitable estoppel does not apply to tolling agreements; and that the Darvilles unreasonably delayed before moving forward.  (*See* doc. 27.)  The Court will address each of these assertions.

First, Millard insists that the Tolling Agreement's writing requirement negates equitable estoppel principles.  Because the Agreement provided that the tolling period could be modified only in a writing signed by all parties, Millard reasons, the Darvilles could not have been misled by Millard's counsel's oral communications of November 18, 2014 into believing that the limitations period was being extended.  The defect with this line of reasoning lies in undisputed evidence that the parties had never rigorously complied with the writing requirement in completing numerous previous extensions.  By Millard's own reckoning, "the parties' course and conduct was to orally agree to extend the Tolling Agreement and then exchange written correspondence confirming the extension."  (Doc. 27, at 5 (emphasis omitted).)  A perfunctory email confirming an oral agreement is not a "writing signed by the parties hereto," as mandated by Paragraphs 6 and 9 of the Tolling Agreement.  In short, the parties had routinely played fast and loose with the specific, clear terms of the Tolling Agreement's writing requirement.  For that reason, the Court cannot conclusively determine as a matter of law that the Darvilles' reliance on

Millard's November 18 telephonic misrepresentations concerning extension of the limitations period was unreasonable or otherwise not in good faith.[14]

Second, Millard urges the Court to reject the equitable estoppel defense because the Darvilles "cannot point to any affirmative conduct on the part of Millard that would cause [them] to reasonably believe that the statute of limitations would remained [*sic*] tolled indefinitely." (Doc. 27, at 5-6.)  The summary judgment record, viewed in the light most favorable to the Darvilles, readily refutes this contention.  Again, the Darvilles' evidence (which must be accepted as true for summary judgment purposes) shows that Millard's counsel notified the Darvilles' counsel on November 18 that Millard agreed to toll the statute of limitations for the Darvilles' claims so that mediation could occur in 2015.  That evidence, if deemed credible by the trier of fact, constitutes exactly the sort of "affirmative conduct" that might support equitable estoppel here.

Third, Millard suggests that "[e]quitable estoppel should not overcome the clear requirements of a Tolling Agreement." (Doc. 27, at 7 n.1.)  Courts have recognized, however, that equitable estoppel is equally applicable in both contractual and statutory contexts.  *See, e.g., Keefe*, 867 F.2d at 1323 (equitable estoppel "applies with equal force where, as here, the limitation is contractual rather than statutory, there being no essential difference between the

---

[14]   For the same reasons, Millard's argument concerning the parties' "course and conduct" is unavailing on summary judgment.  Both sides agree that their practice had been to reach oral agreement to extend the tolling period, then to follow up with a confirmatory letter or email.  Millard says the absence of written confirmation on November 18 defeats reasonable reliance here.  The trouble is that nothing in that "course and conduct" establishes that such oral agreements were invalid or ineffectual unless and until a confirmation email was transmitted by one side or the other.  Just because the Darvilles' practice was to confirm via a short email or letter the telephonic extensions granted by Millard does not necessarily imply that Millard's oral agreement to extend the tolling period was meaningless or otherwise inoperative absent a written confirmation.  These confirmation emails were insufficient to satisfy the Tolling Agreement, so it is unclear why the parties transmitted them at all, much less what (if any) legal effect they had vis a vis oral extension agreements.  Besides, it does not appear to have been unreasonable as a matter of law for the Darvilles to view Millard's counsel's email of November 18 – confirming that morning's telephone conversation with the Darvilles' lawyers and indicating that new mediation dates would be coordinated in short order – as the requisite confirmation.  As noted, setting mediation dates for 2015 would be a hollow exercise unless the Tolling Agreement had been extended beyond its December 15, 2014 deadline.  While Millard's counsel's email of November 18 did not say much, the Court cannot conclusively determine on summary judgment that it said too little for the Darvilles' reliance on the promised extension to be reasonable.

two") (citation and internal quotation marks omitted).[15]  Moreover, where, as here, the parties had never rigorously followed the specified contractual procedure for extending a limitations period on nine previous tries, a party cannot evade equitable estoppel for want of rigid adherence to "the clear requirements of [said] Tolling Agreement" on the tenth occasion.

Fourth, Millard asserts that the Darvilles lose the benefit of equitable estoppel because they tarried for several months after the December 15, 2014 deadline before "seeking mediation, settlement or litigation." (Doc. 27, at 8.)  Millard is correct that equitable estoppel, if it applies here, does not afford the Darvilles an unlimited enlargement of the limitations period.  Indeed, "a defendant, as a result of conduct causing the plaintiff to delay filing suit, should not be permanently estopped from raising a limitation period as a defense.  Such a theory would forgive procrastination on the plaintiff's part, permitting the prosecution of stale claims." *Keefe*, 867 F.2d at 1324; *see generally Weaver v. Firestone*, 155 So.3d 952, 962 (Ala. 2013) ("The rule of equitable estoppel includes, of course, the requirement that the plaintiff exercise reasonable diligence.") (citation omitted).  Unfortunately, the summary judgment record does not reflect what, if anything, happened between the November 18, 2014 communications and the May 11, 2015 filing of the Complaint.  The Court simply has no record basis to assess Millard's argument that the Darvilles failed to act with reasonable diligence to pursue their litigation, thereby stripping them of the protections of equitable estoppel.  Furthermore, Millard has improperly raised this argument for the first time in its reply brief, and the Court has received briefing from neither side on the important question of whether the sort of delay involved here falls inside or outside the scope of "reasonable diligence" as contemplated by the aforementioned authorities.  Deciding a largely unbriefed issue on summary judgment with the benefit of neither a developed

---

[15]    *See also Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 877 (7th Cir. 1997) ("the doctrine of equitable estoppel should be applied more liberally to a contractual limitations period, as here, than to a statutory limitations period"); *D.L. Lee*, 916 F. Supp. at 1577 ("The doctrine of equitable estoppel may be used to bar inequitable reliance on statutory or contractual time limitations.").  Millard's reliance on *O'Boyle v. Shulman*, 2010 WL 1408444 (E.D. Tenn. Apr. 4, 2010), for the proposition that equitable estoppel can never overcome the terms of a tolling agreement is misplaced.  In *O'Boyle*, the court found the plaintiffs' claims time-barred because "the one-year statute of limitations expired before entry of the first tolling agreement." *Id.* at *8.  That circumstance has no analogue here.

factual record nor focused legal submissions would be inappropriate; therefore, the undersigned declines to do so.

### IV.     Conclusion.

For all of the foregoing reasons, the Court finds that genuine issues of material fact exist as to the Darvilles' equitable estoppel defense to Millard's assertion that their damages claims arising from the August 2010 ammonia release are time-barred.  Millard's Motion for Summary Judgment (doc. 20) is **denied**.

DONE and ORDERED this 29th day of January, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE